REVISED September 9, 2013

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**United States Court of Appeals
Fifth Circuit**

**F I L E D**

August 30, 2013

Lyle W. Cayce
Clerk

No. 12-60547

KHAGENDRA SHARMA,

Petitioner

v.

ERIC H. HOLDER, JR., U.S. ATTORNEY GENERAL.

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals

Before REAVLEY, ELROD, and GRAVES, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

Nepalese citizen Khagendra Sharma petitions for review of the Board of Immigration Appeals (BIA) denial of his application for asylum and withholding of removal under 8 U.S.C. § 1252(b) and the Convention Against Torture (CAT), arguing that he had been subjected to past persecution and feared future persecution in Nepal based on his political opinion and membership in a particular social group, the Nepal Student Union (NSU). Because we find that the Immigration Judge (IJ) and BIA incorrectly required Sharma to produce direct proof of the nexus between his persecution and his political opinion, the petition for review is GRANTED, the BIA's decision is VACATED in part, and

the case is REMANDED to the BIA for further proceedings consistent with this decision.

## FACTS AND PROCEDURAL HISTORY

The factual background of this case was established primarily through Sharma's own testimony, which the IJ found to be credible.

Khagendra Sharma, a citizen of Nepal, entered the United States without inspection on or about February 5, 2010, at Hidalgo, Texas. Sharma filed an affirmative application for asylum and withholding of removal on January 19, 2011, asserting that he had been subjected to past persecution and feared future persecution in Nepal based on his political opinion and membership in a particular social group, the NSU, which opposed the Communist Party of Nepal (the Maoists).

The Department of Homeland Security (DHS) subsequently issued Sharma a Notice to Appear (NTA), charging him with removability, pursuant to 8 U.S.C. § 1182(a)(6)(A)(I), as an alien present in the United States without having been admitted or paroled. At an initial hearing before an IJ, Sharma admitted the allegations in the NTA and conceded removability but requested relief in the form of asylum, withholding of removal, and protection under the CAT.

In a hearing held before an IJ on April 19, 2011, Sharma testified that when he was 14 years old, in 2004, he and his fellow school volleyball teammates had been kidnaped by a group of Maoists on the way home from a volleyball tournament. The Maoists abducted the group and took them to another village, where the Maoists let their supporters go. The Maoists kept Sharma, his teacher, and five other students, all seven of whom the Maoists knew were not their supporters, taking them farther away to a house in the mountains, where Sharma was imprisoned for five to seven days.

During his captivity, the Maoists pressured Sharma to support their political party. Sharma refused, instead telling his captors that he supported

another political group, the Nepali Congress Party, and was a member of the NSU, which opposed the Maoists. The Maoists then moved Sharma to a remote village where they held him for over one month, denied him food, and tortured and urinated on him. Sharma eventually escaped his captors, and instead of returning to his hometown, went to live in another area of Nepal with his uncle. Sharma continued to play volleyball and was abducted for a second time by the Maoists in 2009, this time with a demand that he coach their volleyball team. When he was released by the Maoists he fled to India, then to Ecuador, then to Guatemala, then to Mexico, and ultimately to the United States.

The IJ denied Sharma's applications for asylum, withholding of removal, and protection under the CAT, determining that Sharma had not met his burden of demonstrating that he was eligible for relief. With respect to the claim for asylum, the IJ found that Sharma failed to show that the harm he experienced at the hands of the Maoists was because of his political opinion, real or imputed. In connection with the 2004 kidnaping, the IJ found that, while the Maoists subjected Sharma to forced labor and forced recruitment, the evidence, including the events at Sharma's school, showed that the Maoists were attempting to disrupt the educational process and fill their ranks with young recruits. The IJ concluded that there was insufficient evidence to show that Sharma's political opinion was a central reason for the 2004 abduction.

Sharma appealed to the BIA and the BIA dismissed his appeal. The BIA upheld the IJ's finding that Sharma failed to meet his burden of proving that a central reason for the harm he suffered was his political opinion. The BIA found that the record was devoid of evidence that the Maoists ever mentioned Sharma's politics. The BIA determined instead that the Maoists targeted Sharma because they wanted to recruit him to support their party and wanted him to train their volleyball team. The BIA reasoned that while the Maoists' actions were motivated by their own political opinion, that did not necessarily

3

mean that they were motivated to harm or recruit Sharma because of his political opinion. The BIA concluded that Sharma "did not meet his burden of proving the nexus standard required for asylum," which in turn also defeated his claim for withholding of removal. It similarly upheld the IJ's denial of humanitarian asylum and relief under the CAT. Sharma timely petitioned this court for review of the BIA's decision denying his application for asylum.[1]

## STANDARD OF REVIEW

"We review the decision of the BIA, and reach the underlying decision of the immigration judge only if that decision has some impact upon the BIA's opinion." Ontunez-Tursios v. Ashcroft, 303 F.3d 341, 348 (5th Cir. 2002) (citing Mikhael v. INS, 115 F.3d 299, 302 (5th Cir. 1997)). Questions of law are reviewed de novo, id., and factual findings are reviewed "under the substantial evidence test, reversing only when the evidence is so compelling that no reasonable fact finder could fail to find the petitioner statutorily eligible for relief." Arif v. Mukasey, 509 F.3d 677, 679-80 (5th Cir. 2007) (footnote, citation, and internal quotation marks omitted); see also 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."). The determination that an alien is not eligible for asylum is a factual finding reviewed under the substantial evidence standard. Chen v. Gonzales, 470 F.3d 1131, 1134 (5th Cir. 2006) (internal citation omitted). "The substantial evidence standard requires only that the Board's conclusion be based upon the evidence presented and that

---

[1] Because Sharma has raised no argument on appeal challenging the denial of his applications for withholding of removal and protection under the CAT, he has abandoned those claims. See Soadjede v. Ashcroft, 324 F.3d 830, 833 (5th Cir. 2003). He has likewise abandoned his claim for humanitarian asylum by failing to raise any challenge to the BIA's conclusion that he is not entitled to humanitarian asylum. See id. Sharma's initial claim that he was persecuted because of his membership in a particular social group is both abandoned and unexhausted. See id.; Omari v. Holder, 562 F.3d 314, 319 (5th Cir. 2009) (holding that this court lacks jurisdiction to consider arguments not first presented to the BIA).

it be substantially reasonable." Carbajal-Gonzalez v. INS, 78 F.3d 194, 197 (5th Cir. 1996) (internal quotations and citations omitted).

DISCUSSION

An alien is eligible for a discretionary grant of asylum if he qualifies as a refugee. 8 U.S.C. § 1158(b)(1)(A), (B)(I). A refugee is a person who is outside of his or her country and is unable or unwilling to return "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); see also 8 C.F.R. § 1208.13(b). The alien has the burden of proving that he is a refugee and that one of these five protected grounds "was or will be at least one central reason for persecuting" him. 8 U.S.C. § 1158(b)(1)(B)(I). "[A]lthough a statutorily protected ground need not be the only reason for harm, it cannot be incidental, tangential, superficial, or subordinate to another reason for harm." Shaikh v. Holder, 588 F.3d 861, 864 (5th Cir. 2009) (internal quotation marks and citation omitted). "In determining whether the [asylum] applicant has met the applicant's burden, the trier of fact may weigh the credible testimony along with other evidence of record." 8 U.S.C. § 1158(b)(1)(B)(ii). An alien's testimony may be sufficient to sustain his burden if it is credible, is persuasive, and refers to sufficient specific facts to demonstrate he is a refugee. Id.

In order to show persecution on account of political opinion, an asylum applicant must show proof of a nexus between his political opinion and the persecution. See Tamara-Gomez v. Gonzales, 447 F.3d 343, 349 (5th Cir. 2006) ("The alien carries the burden to establish a nexus between the persecution and one of the five statutory grounds for asylum."); Thuri v. Ashcroft, 380 F.3d 788, 792 (5th Cir. 2004) (noting the requirement that the "alien to prove some nexus between the persecution and the five protected grounds") (citing Ontunez-Tursios, 303 F.3d at 349) (internal quotations omitted); see also INS v.

Elias-Zacarias, 502 U.S. 478, 482-84 (1992) (requiring a showing of compelling evidence of the motive behind the persecution). To show proof of the required nexus, the alien "must demonstrate through some evidence, either direct or circumstantial, that the persecutors know of his (the alien's) political opinion and [have] or will likely persecute him because of it." Ontunez-Tursios, 303 F.3d at 351. The petitioner is not required to provide direct proof of his persecutor's motives, but rather provide "some evidence of it, direct or circumstantial." Elias-Zacarias, 502 U.S. at 483.

We remand this case because the IJ's finding, as affirmed by the BIA, that Sharma failed to prove the necessary nexus that he was persecuted on account of his political opinion, is not supported by substantial evidence. The BIA was correct in holding that coercive recruitment, standing alone, does not establish persecution on account of a protected factor. See Elias-Zacarias, 502 U.S. at 482 ("[T]he mere existence of a generalized 'political' motive underlying the [persecutors'] forced recruitment is inadequate to establish . . . persecution on account of political opinion.") (emphasis omitted). In the instant case, however, the evidence presented through Sharma's testimony reveals more than just coercive recruitment by the Maoists. Although Sharma was not initially abducted by the Maoists based on his political affiliation, Sharma's testimony, which the IJ credited, shows that he was subjected to torture and a longer detention than others in the group because of his political opposition to the Maoists.[2] The Maoists then escalated their abuse when Sharma affirmed both his opposition to their political party and his membership in the NSU, a group opposed to the Maoists. While it was reasonable for the BIA in this case to find that the Maoists were motivated, at least in part, by Sharma's refusal to

---

[2] Sharma bases his claim of persecution on account of his political opinion on his 2004 abduction only, conceding that his second abduction in 2009 was motivated only by the Maoists' desire to recruit him as a volleyball player. See Brief for the Petitioner at 9.

6

cooperate with them, it does not appear that the IJ or the BIA considered all of the evidence in the record relating to whether the Maoists were also motivated by Sharma's political opinion.

The BIA also concluded that Sharma did not meet his burden of proof on the nexus requirement based on its findings that "there is no testimony or evidence in the record that the Maoists ever mentioned the respondent's politics." An alien seeking asylum, however, is not required to provide "direct proof of his persecutors' motives." Elias-Zacarias, 502 U.S. at 483. All that is required is that Sharma "provide some evidence of it, direct or circumstantial." Id.; see also Ontunez-Tursios, 303 F.3d at 351 (stating that an alien may demonstrate the persecutors' motives through "direct or circumstantial evidence"). Sharma has shown through his credited testimony that the Maoists escalated their abuse and prolonged his imprisonment when Sharma expressed his support for the NSU, a group opposed to the Maoists. Accordingly, the BIA improperly required Sharma to provide direct evidence of the nexus between his political opinion and the persecution, and did not consider all of the evidence in the record bearing upon the Maoists' motives in targeting Sharma. The BIA's finding that Sharma failed to meet his burden of proof is not supported by substantial evidence.

Moreover, the BIA did not make a determination as to whether Sharma had shown the existence of a well-founded fear of future persecution on account of his political opinion if he were to be deported. See 8 C.F.R. § 208.13(b) ("The applicant may qualify as a refugee either because he or she has suffered past persecution or because he or she has a well-founded fear of future persecution."); see also 8 C.F.R. § 208.13(b)(2)(i)(A) ("An applicant has a well-founded fear of persecution if . . . [t]he applicant has a fear of persecution in his or her country of nationality . . . on account of race, religion, nationality, membership in a particular social group, or political opinion . . . ."). To show proof of a

well-founded fear of future persecution, the alien "must show that a reasonable person in the same circumstances would fear persecution if deported." Orellana-Monson v. Holder, 685 F.3d 511, 518 (5th Cir. 2012) (citing Jukic v. INS, 40 F.3d 747, 749 (5th Cir. 1994) (internal quotations omitted). "The [alien's] subjective fear of future persecution must be objectively reasonable." Id. Furthermore, "[a]n applicant who has been found to have established such past persecution shall also be presumed to have a well-founded fear of persecution on the basis of the original claim." 8 C.F.R. § 208.13(b)(1). The BIA should consider all of the evidence to determine whether Sharma has met his burden to prove the existence of a well-founded fear of persecution.

## CONCLUSION

Accordingly, the petition for review is GRANTED, the BIA's decision is VACATED in part, the motion for stay of deportation pending review is GRANTED, and the case is REMANDED to the BIA for further proceedings consistent with this decision.