# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 21, 2020

Lyle W. Cayce
Clerk

No. 19-60826

Alexander Erasmo Campo-Benites,

*Petitioner*,

*versus*

William P. Barr, U.S. Attorney General,

*Respondent*.

Petition for Review of an Order
of the Board of Immigration Appeals
BIA No. A200-005-955

Before Jones, Davis, and Willett, *Circuit Judges*.

Per Curiam:*

Alexander Campo-Benites is a native and citizen of El Salvador who entered the United States illegally in 2005. Campo-Benites did not appear at his removal proceeding, so the immigration judge ordered him removed *in absentia*. Campo-Benites now seeks to reopen removal proceedings under 8 U.S.C. § 1229a(c)(7)(C)(ii), which authorizes an alien to file a motion to

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

reopen at any time based on "changed country conditions." Campo-Benites argues that changes only affecting a "particular social group" or PSG—here, a small nuclear family—can constitute changed country conditions. But because Campo-Benites only alleges changes in personal circumstances, we deny his petition for review.

I

Alexander Erasmo Campo-Benites, a native and citizen of El Salvador, entered the United States without permission in July 2005. The same day he entered, the Department of Homeland Security gave Campo-Benites a notice to appear, which charged him with removability under 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled. The notice to appear said that an *in absentia* removal order may be entered if he failed to give DHS his address. A border patrol officer gave Campo-Benites this information orally in Spanish, and he was released by DHS. Campo-Benites did not provide the immigration court with his address, so no hearing notice was sent. He did not appear at the September 2005 hearing, and the immigration judge entered an *in absentia* removal order.

Thirteen years later, in January 2019, Campo-Benites tried to reopen his case with the immigration court on multiple grounds, most of which are now irrelevant. The one ground Campo-Benites continues to press on appeal is to seek asylum and related relief based on changed country conditions. In 2017, according to Campo-Benites, gang members in El Salvador stole the car of his brother, Aldalberto. The gang members told Aldalberto not to go to the police, threatening that they would find him if he snitched. Aldalberto went to the police despite the threat. The night Aldalberto filed a report, he received a text message from one of the gang members that said, "You

shouldn't have done what you did" and that Aldalberto "better be careful." That was the last message Aldalberto received from the gang.

With his motion to reopen, Campo-Benites offered an expert report, which stated that Campo-Benites "would be at high risk of egregious physical harm and possibly death if he returned to El Salvador." According to the expert, should Campo-Benites return, he'd become a "lightning rod" for the gang's animosity towards his brother. The expert provided several pages of analysis based on decades of field work and research.

In February 2019, an immigration judge denied Campo-Benites's motion to reopen. And the Board of Immigration Appeals dismissed Campo-Benites's appeal of the IJ's decision. Campo-Benites timely petitioned us for review.

## II

We review the Board's denial of a motion to reopen for abuse of discretion. *INS v. Doherty*, 502 U.S. 314, 323 (1992). We must affirm the Board's decision, even if we believe the denial was in error, "so long as it is not capricious, racially invidious, utterly without foundation in the evidence, or otherwise so irrational that it is arbitrary rather than the result of any perceptible rational approach." *Cruz v. Barr*, 929 F.3d 304, 308 (5th Cir. 2019) (quoting *Singh v. Gonzales*, 436 F.3d 484, 487 (5th Cir. 2006)). We review the Board's factual determinations under the substantial evidence standard. *Zhao v. Gonzales*, 404 F.3d 295, 306 (5th Cir. 2005). Those factual findings must stay in place unless "any reasonable adjudicator would be compelled to conclude to the contrary." § 1252(b)(4)(B). Moreover, "motions to reopen deportation proceedings are 'disfavored,' and the moving party bears a 'heavy burden.'" *Altamirano-Lopez v. Gonzales*, 435 F.3d 547, 549 (5th Cir. 2006) (quoting *INS v. Abudu*, 485 U.S. 94, 107–08 (1988)).

No. 19-60826

If the Board conducts its own review of the evidence and law, our review is limited to the decision of the Board. *Yuqing Zhu v. Gonzales*, 493 F.3d 588, 593 (5th Cir. 2007). But if the Board considered the underlying decision of the immigration judge, we can also consider that. *Sharma v. Holder*, 729 F.3d 407, 411 (5th Cir. 2013). Here, the Board did consider the IJ's decision.

## III

A motion to reopen removal proceedings is subject to a 90-day limitation. § 1229a(c)(7)(C)(i). But there is no time limit on a motion to reopen if the applicant seeks asylum or withholding of removal based on "changed country conditions arising in the country of nationality or the country to which removal has been ordered." § 1229a(c)(7)(C)(ii). Such evidence of changed country conditions must not have been available "and would not have been discovered or presented in the previous proceeding." *Id.* The petitioner must show more than a "continuation of ongoing violence" to demonstrate changed country conditions. *Singh v. Lynch*, 840 F.3d 220, 222 (5th Cir. 2016) (per curiam). The change must be "material" rather than merely "incremental." *Nunez v. Sessions*, 882 F.3d 499, 508–09 (5th Cir. 2018). Likewise, "individual incidents, without evidence that they are part of a larger material change, do not constitute changed country conditions." *Id.* at 509. A change in "personal circumstances" will not suffice. *Id.*

Campo-Benites frames the central question on appeal as whether "a change in the treatment of a small group" can constitute changed country conditions.[1] He argues that the Board erroneously answered this question in

---

[1] Central to his premise is that Campo-Benites's family can qualify as a PSG. Neither the IJ, nor the Board addressed this claim. Nor will we. Because relief is not warranted even if his family is a PSG, we need not answer the question. *But cf. Pena*

4

No. 19-60826

the negative. And, he contends, because the Fifth Circuit has never directly addressed this question, the "IJ's reliance on Fifth Circuit cases is misleading."[2] We disagree. The IJ and the Board found the facts of this case analogous to other cases in which we have considered purely personal changes in circumstances—changes that do not constitute changed country conditions.

---

*Oseguera v. Barr*, 936 F.3d 249, 250–51 (5th Cir. 2019) (noting the Board's recent decision that a family may qualify as a PSG, but the decision must be reached on a case-by-case basis; "In the ordinary case, a family group will not meet that standard, because it will not have the kind of identifying characteristics that render the family socially distinct within the society in question." (citing *Matter of L-E-A-*, 27 I.&N. Dec. 581, 586 (U.S. Att'y Gen. 2019))).

[2] Campo-Benites also argues that the Board has previously held that changes only affecting families *can* constitute changed country conditions, and this inconsistency alone may render the Board's denial here an abuse of discretion. It's true that an agency abuses its discretion if it departs from its own established precedent, "without announcing a principled reason for the departure." *Galvez-Vergara v. Gonzales*, 484 F.3d 798, 802 n.5 (5th Cir. 2007) (cleaned up) (quoting *Johnson v. Ashcroft*, 286 F.3d 696, 700 (3d Cir. 2002)). But here, Campo-Benites points only to unreported Board decisions, which have no precedential value. 8 C.F.R. § 1003.1(g); *see also Leal-Rodriguez v. I.N.S.*, 990 F.2d 939, 946 (7th Cir. 1993) ("[B]y INS's own regulations, [unpublished] decisions carry no precedential weight. A survey of unpublished BIA decisions shows that they are treated as limited to their facts. They do not serve as authority for later proceedings involving the same issues, nor do they make new law." (internal citation omitted)).

Plus, to whatever extent the Board's decision was incongruent with the unpublished decisions Campo-Benites cites, the Board *did* announce a principled reason for departure; the Board pointed to a recent opinion of the Attorney General, which overruled the Board's prior precedential decision that "family" can constitute a particular social group. *See Matter of L-E-A-*, 27 I.&N. Dec. at 586. Here the Board noted that in *Matter of L-E-A-*, the AG recently found that "most families are not inherently socially distinct and therefore do not qualify as a particular social group." So even assuming that (a) the unpublished Board decisions Campo-Benites points to were precedential, and that (b) the Board here departed from those decisions, the Board still did not abuse its discretion because it announced a principled reason for the departure—the AG overruling prior precedent on nuclear families as PSGs.

For example, in *Ramos-Lopez v. Lynch*, the petitioner claimed she was at risk because of her brother-in-law's past involvement with a drug cartel. 823 F.3d 1024, 1026 (5th Cir. 2016). We held that the cartel involvement was merely "a change in personal circumstances." *Id.* Similarly, in *Singh v. Lynch*, the petitioner challenged a denied motion to reopen based on changed country conditions, alleging new threats of violence against his mother. 840 F.3d at 222. Singh also averred that Indian police had threatened him, wrongly accusing him of receiving terrorist training in Pakistan. *Id.* We found that these events merely showed a "continuance of ongoing violence" in India and that Singh had shown only a "change in personal circumstances," which does not constitute changed country conditions. *Id.* at 223–23.

Campo-Benites also argues that to "interpret 'changed country condition' to exclude local, or more personal changes, would violate Congressional intent" because Congress did not use the term "country-wide." But neither the Government, nor the IJ, nor the Board suggested the change must be "country-wide." The plain text, however, suggests it must be a changed country condition, which is why it's no surprise the Fifth Circuit has repeatedly held that changed personal circumstances don't count. *See, e.g.*, *Nunez*, 882 F.3d at 509; *Singh*, 840 F.3d at 222–23.

Campo-Benites likewise argues that the Board's decision is incongruent with asylum laws generally because Congress expressly authorizes asylum for PSGs. And groups are not "particular" when they include "large swaths of society." So, Campo-Benites contends, it would not make sense to limit changed country conditions "to only sweeping changes." But contrary to the assertions of Campo-Benites, no one is arguing that the change must affect "large swaths of society" in a "sweeping" way. But the change must be "material"—reflecting conditions in the country itself. *Nunez*, 882 F.3d at 509. What matters is the nature of the changes.

No. 19-60826

Campo-Benites's claim is of the same nature as Singh's. Criminal violence was already widespread in El Salvador, and Campo-Benites doesn't direct us to any evidence showing that the violence has gotten worse. His family's story is a turn of events that increased his personal risk of suffering from the long-prevalent criminal violence in El Salvador. That's a change in personal circumstances.[3] And because he cannot demonstrate a changed country condition, he is subject to the normal 90-day limitation. So his motion to reopen came far too late.

IV

For these reasons, we DENY Campo-Benites's petition for review.

---

[3] Campo-Benites contends that the Seventh Circuit agrees with his understanding of changed country conditions. In *Joseph v. Holder*, the petitioner, a single Christian woman, feared going back to Pakistan. 579 F.3d 827, 829 (7th Cir. 2009). Her family had arranged a marriage for her, which she claimed sufficed as a "changed circumstance." *Id.* The Seventh Circuit agreed, explicitly rejecting the single-member Board order that read 8 C.F.R. § 1003.2(c)(3)(ii) to cover only "a dramatic change in the political, religious or social situation." *Id.* at 831. The Seventh Circuit also disagreed with the Board's interpretation on the grounds that the Board excluded "personal circumstances." *Id.* at 834.

If Campo-Benites were in the Seventh Circuit, his position might—theoretically—hold water. But, as explained above, we have explicitly and repeatedly rejected claims based on changes in personal circumstances. So Campo-Benites can't rely on *Joseph* because it is in direct conflict with our own precedent.