# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 20, 2024

Lyle W. Cayce
Clerk

No. 20-60937

Collins Enyong Aben,

*Petitioner*,

*versus*

Merrick Garland, U.S. Attorney General,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A099 314 949

Before Richman, *Chief Judge* and Ho and Engelhardt, *Circuit Judges*.

Priscilla Richman, *Chief Judge*:

Collins Enyong Aben entered the United States without valid entry documents and was placed in removal proceedings. He sought asylum, withholding of removal, and protection under the Convention Against Torture (CAT). The Immigration Judge (IJ) denied all relief, and the Board of Immigration Appeals (BIA) dismissed the appeal. We deny the petition for review as to Aben's CAT claim. We grant it as to Aben's asylum and

No. 20-60937

withholding of removal claims, vacate the BIA's opinion, and remand for further proceedings.

**I**

Aben is a native and citizen of Cameroon. In 2019, he arrived in the United States and applied for admission without a valid immigration visa or other entry document. During his initial interview with a Border Patrol officer, he stated that he left Cameroon "[b]ecause of fear of torture" and that he sought asylum. When asked why he did not seek protection from the Cameroonian government, he stated he "believe[s] they want to hurt me and kill me." He asserted that the Cameroonian military threatened to kill him because, as a nurse, he treated separatist fighters.[1] When asked whether he had been persecuted because of his political opinions, he answered affirmatively.

Aben applied for asylum and withholding of removal, indicating that his application was based on political opinion and membership in several particular social groups (PSGs): an Anglophone minority, an accused separatist, someone who treats separatists, and someone from Batibo. Aben does not claim to be a separatist himself; rather, he claims that the Cameroonian government imputed that political opinion to him.

We start by recounting the facts, as Aben presents them, of his persecution in Cameroon. Then we turn to his proceedings in the immigration courts.

---

[1] These fighters are sometimes called Ambazonia Boys or Amba boys. They will be referred to here as separatists.

No. 20-60937

## A

The Cameroonian conflict that is the subject of Aben's applications can be traced to the early 20th century. France and Britain divided the territory after seizing it from Germany. In 1960, the French-speaking (Francophone) section won independence and established Cameroon. A year later, the English-speaking (Anglophone) section joined the new country. Despite being a formally bilingual country, the Francophones dominate the government and "elite circles," while Anglophones claim they are marginalized. In 2016 and 2017, Anglophones protested their position, which prompted a violent response from the Francophone establishment. A group of Anglophones, referred to here as separatists, began armed attacks against the Francophone government.

At Aben's removal hearing, Aben appeared pro se and testified that he is a Cameroonian Anglophone. He had been working for a hospital in Njinikom, in the Anglophone part of Cameroon, as a nurse for six years. Although he never took part in the political demonstrations, he treated Anglophones who were wounded during the conflict. This prompted the Francophone military to accuse Aben and other hospital staff of treating "separatist fighters," which led to the harassment of and threats to Aben and his colleagues; beatings of his colleagues; and the arson of a hospital ambulance.

Aben testified that each time he travelled from Njinikom to Bamenda, also within Anglophone Cameroon, the military stopped his vehicle because he was Anglophone. He was removed from the vehicle, instructed to lie down on the road and to assume stressful positions for up to fifteen to twenty minutes, and forced to pay a bribe. The stops were not directed at Aben, individually, however. The military was stopping people in general as they travelled up and down the road. When asked to produce identification, the

3

military would determine that Aben was a nurse, would accuse him of treating separatist fighters and told him: "You Anglo fools[,] you think you can fight us—we will kill you all one by one."

Because of these "mounting tensions," Aben decided to leave his job as a nurse and flee. On his way to Belo, the military arrested him and held him at an apartment with approximately thirty other people for three days. During his interrogation, Aben said he was a farmer instead of nurse because of his negative experience with the military at the hospital. However, the military already knew he was a nurse, and they knocked him on the head and gave him a "very heavy slap." Aben was "beaten with a stick" and a belt on his feet, which caused blisters and bruises. The prisoners were also made to pass their feces and urine around in a bucket. A soldier whom Aben had treated at the hospital remembered him favorably and helped him escape. The soldier took Aben outside at gunpoint ostensibly to empty the bucket, but instead told him to run as fast as he could or he would be killed.

Aben successfully escaped to his uncle's home in Bamenda, where he stayed for five months. Because he was afraid to go the hospital, he self-treated his wounds with sodium chloride and betadine, and he took pain killers and anti-inflammatory drugs. Aben was again arrested when the military conducted a general raid looking for separatist fighters. The military broke into his uncle's home, began hitting Aben on the back with a gun and kicking him as he was taken to a truck holding more than twenty other individuals. As the military put Aben in the truck, he was told, "You think you can fight us." The truck was attacked, and Aben escaped.

Aben fled to his aunt's home in Batibo. He stayed inside as "[a] lot of gun battles" occurred outside, and he feared being arrested. Aben helped a man who was bleeding. The military learned of Aben's assistance, which motivated Aben to flee for Nigeria. Along the way, the military arrested him

again and detained him for three days in a small brick house with more than twenty men and boys.  The military interrogated him, identified him as a nurse from Batibo, and blamed him for treating separatist fighters.  He was told, "you used the curse on Batibo, you think you can fight the government," and "[w]e will kill you [Anglos] one by one."  The military also told him that if he escaped, he would be found and killed.  The military beat him "all around [his] body, especially on the lower legs and under [his] feet[]," which caused blisters, sores, inflammation, and pain.  One of the soldiers went to take Aben's ID card, but another told him to not "bother" because "[Aben] w[ould] be killed."

During this detention, other Anglophones were taken out of the room and not seen again.  Aben believed they were killed because of the soldiers' statements and the fact that he occasionally heard gunshots.  He and at least ten others were able to escape when the camp came under attack by what Aben presumed were separatist fighters.  One escapee was hit by a "stray bullet" and "died along the way" as they "struggled" through bushes and a forest to get to a river on the border.  Aben was helped by a fisherman, entered Nigeria and began his migration to the United States.

When asked by the IJ why he did not photograph his injuries or seek medical attention, Aben testified that he did not know that they would be useful and that his cell phone was seized by the military.  Aben also said that he was afraid because using a cell phone could get him in trouble.  He never visited a hospital out of fear of the military.

When asked whether he tried to relocate to any other area in Cameroon, Aben responded that he could not go to his mother's home in Yaoundé because it was in Francophone territory and had violent unrest.  He also testified that Cameroon is small, the military is everywhere, and the military had information about his identification.

No. 20-60937

## B

The IJ denied Aben's applications. He first held that the Third-Country Transit Bar prohibited Aben from applying for asylum because he did not apply for protection in any of the countries he traversed before arriving in the United States via the southern border.[2] The IJ doubted the credibility of Aben's testimony because Aben failed to provide "any photographs or any other medical evidence to indicate that [he] had been harmed while" in Cameroon yet was able to produce evidence that he was a nurse (his identification card) and because of "two major inconsistencies" in Aben's testimony.

However, these two inconsistences between Aben's testimony at the hearing and his initial interview with Border Patrol are irrelevant to the current petition. In his initial interview with a Border Patrol officer, Aben—confusingly—stated that he had *not* been physically harmed or arrested in Cameroon despite later testifying that he had been. Aben countered that he was experiencing PTSD-related stress during the initial interview with Border Patrol and that the officer had cut off his complete answer to that question, telling him to "reserve details for the court." We need not resolve this dispute because the BIA did not sustain the IJ's adverse credibility finding, assuming instead that Aben's testimony was credible. We review the decision of the BIA, not the IJ.[3] Further, the government concedes that the IJ's credibility finding is not relevant to this petition. Like the BIA, we will assume Aben's testimony is credible for purposes of this appeal.

---

[2] *See* 8 C.F.R. § 208.13(c)(4) (originally enacted by Asylum Eligibility and Procedural Modifications, 84 Fed. Reg. 33,829 (July 16, 2019)), *revoked by* Circumvention of Lawful Pathways, 88 Fed. Reg. 31,314 (May 16, 2023).

[3] *See Sharma v. Holder*, 729 F.3d 407, 411 (5th Cir. 2013).

The IJ then analyzed the merits of Aben's claims. He stated that he would deny the "asylum, withholding and CAT relief" applications even if he found Aben credible based on his failure to establish past persecution. As to asylum, the IJ reasoned that Aben was not harmed "with any significant injuries," and Aben's failure to "provide any medical documentation or any photographs of his injuries" indicates that he did not sustain "serious or life-threatening injuries that would constitute," under this court's jurisprudence, "extreme persecution." Regarding nexus, the IJ found that Aben "was accused by government officials of being involved with the separatists because he was treating [the separatists]." With no elaboration, the IJ concluded that the actions taken against Aben were not "politically motivated" but due to his occupation as a nurse. The IJ also determined that because Aben could not prove past persecution, he was not entitled to a presumption of a well-founded fear of future persecution.

Regarding Aben's withholding of removal claim, the IJ held that because he did not establish eligibility for asylum, he necessarily failed to establish eligibility for withholding of removal. Finally, the IJ held that Aben did not meet his burden for relief under CAT because it "does not appear" that a government official tortured him.

Aben appealed to the BIA. The BIA dismissed his appeal. It first held that Aben was no longer prohibited from seeking asylum because the Third-Country Transit Bar had been enjoined.[4] It then assumed Aben was "credible for the purpose of adjudication," choosing to not sustain the IJ's credibility finding. It stated that the facts were not in dispute, and evaluated his claims for asylum, withholding, and protection under CAT.

---

[4] *See East Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 987-88 (9th Cir. 2020).

No. 20-60937

The BIA noted the IJ's finding that the military's accusations against Aben as being involved with separatists was because of his occupation as a nurse and not because of any political motivations. It further noted that Aben did "not claim to have suffered serious or life-threatening injuries that would be characterized as extreme and to constitute persecution." It agreed with the IJ that Aben did not establish past persecution, and it noted that Aben failed to corroborate his experiences or claimed fear of future persecution. Because Aben failed to address the evidence of policy changes and eased tensions in Cameroon, the BIA held that his fear of future persecution is not objectively reasonable. Accordingly, the BIA held that he could not establish asylum and could therefore not establish withholding of removal. Finally, the BIA stated that it could "discern no clear error with the [IJ's] factual findings" that Aben failed to establish his CAT claim. Aben petitioned this court for review of the BIA's decision.[5]

## II

This court reviews the BIA's decision and will consider the IJ's underlying decision only to the extent it impacted the BIA's decision.[6] Findings of fact, including the denial of asylum, withholding of removal, and CAT protection, are reviewed under the substantial evidence standard.[7] Under that standard, this court may not reverse a factual finding unless the evidence "compels" such a reversal—i.e., the evidence must be "so compelling that no reasonable factfinder could reach a contrary conclusion."[8] It is the petitioner's burden to demonstrate that the evidence

---

[5] 8 U.S.C. § 1252(b)(1).

[6] *See Sharma*, 729 F.3d at 411.

[7] *Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006).

[8] *Id.*

compels a contrary conclusion.[9]  The substantial evidence standard requires that "the [BIA's] conclusion be based upon the evidence presented and that it be substantially reasonable."[10]  "The BIA's complete failure to address uncontroverted evidence . . . does not meet this standard,"[11] and we "cannot affirm a decision that '[f]ails to address key evidence.'"[12]

To be eligible for asylum, an applicant must prove that he is unwilling or unable to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a [PSG], or political opinion."[13]  An alien seeking withholding of removal must demonstrate a "clear probability of persecution" on one of the aforementioned grounds, which is a higher standard than the "well-founded fear of persecution" required for asylum.[14]

## A

Aben argues that the BIA's determination that he failed to prove past persecution is not supported by substantial evidence.  Persecution "has the quality of a sustained, systematic effort to target an individual on the basis of

---

[9] *Id.*

[10] *Sharma*, 729 F.3d at 411 (internal quotation marks and citation omitted).

[11] *Cf. Inestroza-Antonelli v. Barr*, 954 F.3d 813, 818 (5th Cir. 2020) (holding that a complete failure to address uncontroverted evidence was an abuse of discretion).

[12] *Arulnanthy v. Garland*, 17 F.4th 586, 592 (5th Cir. 2021) (quoting *Cabrera v. Sessions*, 890 F.3d 153, 162 (5th Cir. 2018)) (alteration in original); *see also Abdel-Masieh v. INS*, 73 F.3d 579, 585 (5th Cir. 1996) ("While we do not require that the BIA address evidentiary minutiae or write any lengthy exegesis, its decision must reflect meaningful consideration of the relevant substantial evidence supporting the alien's claims.").

[13] 8 U.S.C. § 1158(b)(1); 8 U.S.C. § 1101(a)(42)(A); *Sharma*, 729 F.3d at 411.

[14] *Revencu v. Sessions*, 895 F.3d 396, 402 (5th Cir. 2018) (internal quotation marks and citations omitted).

a protected ground."[15] "It is *not* harassment, intimidation, threats or even assault"; it "does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional."[16] Persecution "is an extreme concept."[17] For example, occasional verbal taunts and being hit in the head with a rock requiring medication to stop the bleeding does not rise to the level of persecution.[18] Rather, persecution is a "*systematic*" effort.[19] An "organized, relentless campaign of intimidation, extortion, and murder" is a "prototypical persecution."[20] It is a "pattern of sustained pursuit."[21]

Aben was arrested and detained three times; held in unlawful captivity for a total of six days; slapped, kicked, and knocked in the head; beaten with a belt and a stick; suffered several lacerations, blisters, sores, and bruises; threatened with death while held at gunpoint; and told he would be killed if he did not run fast enough to escape.

The BIA's determination must be vacated because it fails to account for the credible death threats that Aben received. Soldiers told Aben that they would kill him and all the other "Anglo fools . . . one by one." Soldiers in his last detainment said they would not "bother" to take his ID because he would be killed shortly. These were credible threats. Aben witnessed several

---

[15] *Gjetani v. Barr*, 968 F.3d 393, 397 (5th Cir. 2020) (emphasis omitted).

[16] *Id.* (internal quotation marks and citation omitted).

[17] *Qorane v. Barr*, 919 F.3d 904, 909 (5th Cir. 2019) (citing *Arif v. Mukasey*, 509 F.3d 677, 680 (5th Cir. 2007) (per curiam)).

[18] *Eduard v. Ashcroft*, 379 F.3d 182, 188 (5th Cir. 2004).

[19] *Gjetani*, 968 F.3d at 397 (emphasis added).

[20] *Id.* at 398.

[21] *Id.*

other detainees escorted out of the building. He never saw them again and thinks they "were murdered." The BIA did not address this evidence.

"[W]e cannot affirm a decision that fails to address key evidence."[22] It is true that death threats alone are not necessarily persecution.[23] But when accompanied by beatings, those threats cannot be said to be inconsequential.[24] At the very least, the BIA must address this evidence.[25] The BIA's determination regarding past persecution must be vacated.

## B

The BIA's determination that Aben did not prove a nexus between his harms and a protected ground is also not supported by substantial evidence. To gain asylum on the basis of persecution due to political opinion, an applicant must show through direct or circumstantial evidence that the persecutor (1) knew of his political opinion, and (2) has or will likely persecute him because of it.[26] An applicant need not actually hold a protected political opinion. Instead, the applicant can satisfy the first prong if he can show that the persecutor imputed a political opinion to him.[27] "The relevant

---

[22] *Arulnanthy v. Garland*, 17 F.4th 586, 592 (5th Cir. 2021) (internal quotation marks omitted).

[23] *See Gjetani*, 968 F.3d at 398-99 (holding that several threats related to a one-off event were not persecution); *see also, e.g.*, *Singh v. Barr*, 818 F. App'x 331, 332-33 (5th Cir. 2020) (per curiam) (unpublished) (holding that death threats and two beatings did not rise to the level of persecution).

[24] *See Gjetani*, 968 F.3d at 398-99 (describing death threats, when accompanied by a bombing, as evidence of persecution).

[25] *See Arulnanthy*, 17 F.4th at 592.

[26] *See Ontunez-Tursios v. Ashcroft*, 303 F.3d 341, 351 (5th Cir. 2002).

[27] *See Changsheng Du v. Barr*, 975 F.3d 444, 447 (5th Cir. 2020).

question is the motivation of the persecutor."[28]   Further, the protected ground need only be "one central reason" for the persecution.  It need not be the sole reason.[29]

The BIA erred by not addressing key evidence.[30]  The BIA stated that the actions taken against Aben were not politically motivated but instead were taken due to his occupation as a nurse.  However, the BIA failed to address the fact that Aben testified that the military imputed a political opinion to him because military members chastised him for treating "separatist fighters," and told Aben "you [Anglos] think you can fight the government.  We will kill you one by one."  He also testified that as he was being taken from his uncle's home, he was told, "[Y]ou think you can fight us."  Aben did not claim that the military was targeting him because he was a nurse.  Rather he argues that he was perceived to be assisting separatists and later accused of fighting against the government.  The BIA does not address this evidence.

The government argues that this "is an inference" that the BIA was not "compelled to accept."  While it is true that the BIA is not required to accept the applicant's inferences, the BIA could not ignore this evidence altogether.[31]  The police mentioned Aben's Anglo heritage on almost every occasion that they stopped him.  Nor is there evidence in the record suggesting that all nurses were being targeted regardless of political opinion.  There is, however, substantial evidence that the government imputed a

---

[28] *Ontunez-Tursios*, 303 F.3d at 351.

[29] *See Carbrera v. Sessions*, 890 F.3d 153, 161 (5th Cir. 2018); *Matter of S-P-*, 21 I&N Dec. 486, 492 (BIA 1996).

[30] *See Sealed Petitioner v. Sealed Respondent*, 829 F.3d 379, 387 (5th Cir. 2016).

[31] *See Arulnanthy v. Garland*, 17 F.4th 586, 592 (5th Cir. 2021).

political opinion of separatist allegiance or Francophone opposition to Aben when soldiers claimed—several times—that Aben was "fight[ing them]." That Aben was a nurse played a role, but as Aben argues, the protected ground need not be the sole reason for the persecution. It need only be one central reason, and here, it may be.[32] We vacate the BIA's determination regarding nexus.

## C

The government urges us to deny Aben's petition because, it argues, the BIA did not err regarding its finding that Aben failed to present evidence to corroborate his claims.[33] On this point too, the BIA failed to address obvious pieces of evidence.

The BIA and IJ faulted Aben for not documenting his injuries with pictures or medical records. But Aben stated that the Cameroonian authorities seized his cellphone and that he was afraid to use one because of what the authorities would do if they found documentation. He also stated that he avoided hospitals because of fear. Accordingly, the two means of documenting his injuries that the IJ faulted Aben for not using appear unavailable to him based on the record. Neither the IJ nor BIA addressed how Aben could have "reasonably obtained" corroborating evidence in light of this.[34] Moreover, Aben did submit some evidence to corroborate his

---

[32] *See Sealed Petitioner*, 829 F.3d at 387 (remanding for further consideration of the persecutor's motive when the BIA and IJ failed to address key evidence of mixed motives); *Matter of S-P-*, 21 I&N Dec. at 492.

[33] *See* 8 U.S.C. § 1158(b)(1)(B)(ii) ("Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence.").

[34] *See* 8 U.S.C. § 1158(b)(1)(B)(ii).

claims, including affidavits from friends in Cameroon and Nigeria. The BIA failed to address this evidence. We vacate the BIA's finding that Aben failed to present evidence to corroborate his claims.[35]

## D

An alien who establishes past persecution is entitled to a presumption of a well-founded fear of future persecution.[36] The government may rebut this presumption by presenting evidence of changed country conditions such that the applicant's life or freedom would not be threatened if he returned.[37] The government submitted country conditions evidence at Aben's hearing. The evidence includes news stories detailing peace talks between the separatists and Francophone leaders, including the grant of "special status" to the Anglophone regions of Cameroon. It also includes reports of asylees returning to Anglophone Cameroon and prisoners being released.

The IJ and the BIA found the changed conditions persuasive, determining that Aben's fear of persecution as an Anglophone Cameroonian "[w]as not objectively reasonable in light of the significant change in country conditions . . . and cannot support a well-founded fear of future persecution on that basis." We review this determination for substantial evidence.[38]

Here too the BIA erred by not considering evidence in the record that contradicts its finding. Contradictory evidence is found in the government's exhibit the BIA cites in support of its determination that Aben's well-founded fear was not objectively reasonable. The exhibit includes information that

---

[35] *See Arulnanthy*, 17 F.4th at 592; *see also Yang v. Holder*, 664 F.3d 580, 587 (5th Cir. 2011).

[36] 8 C.F.R. § 1208.13(b)(1).

[37] *Zhu v. Gonzales*, 493 F.3d 588, 596-97 (5th Cir. 2007).

[38] *Id*. at 595, 596-97; *see also Majd v. Gonzales*, 446 F.3d 590, 594 (5th Cir. 2006).

"atrocities have resumed strongly" in Anglophone Cameroon. We vacate the BIA's determination because the board did not account for this key evidence.[39] Additionally, remand will give the BIA an opportunity to address the most recent country conditions evidence and any effect that the DHS's Temporary Protected Status ruling may have.[40]

## III

We hold that the BIA's decision as it relates to Aben's asylum claim must be vacated. As the BIA denied Aben's withholding claim because it determined he was ineligible for asylum, that decision too must be vacated. We need not and do not reach Aben's remaining arguments concerning the BIA and IJ's treatment of his PSG claims.

## IV

In a single paragraph, the BIA found "no clear error" with the IJ's findings and conclusions that Aben did not meet his burden to establish that it is more likely than not that he would be tortured upon his return to Cameroon. Aben challenges this, but we agree with the government that he has forfeited any challenge to the BIA's determination regarding his CAT claim except that it was not fully deliberated because he has not briefed any other arguments to this court.[41] Regarding the amount of deliberation the BIA gave to the IJ's findings, "[w]e do not require that the BIA address

---

[39] *Arulnanthy*, 17 F.4th at 592.

[40] *See* Secretary Mayorkas Designates Cameroon for Temporary Protected Status for 18 Months, Dept. of Homeland Security, https://www.dhs.gov/news/2022/04/15/secretary-mayorkas-designates-cameroon-temporary-protected-status-18-months.

[41] *Rollins v. Home Depot*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument . . . by failing to adequately brief [it] on appeal.").

No. 20-60937

evidentiary minutiae or write any lengthy exegesis."[42]   The BIA and IJ satisfied their duties in that regard by referencing the various country conditions reports and testimonial evidence in the record.[43]

*    *    *

Aben's petition for review is GRANTED in part and DENIED in part.  We DENY the petition for review as to Aben's CAT claim.  We GRANT his petition and VACATE the decision of the BIA as it relates to Aben's asylum and withholding claims, and we REMAND for further proceedings not inconsistent with this opinion.

---

[42] *Abdel-Masieh v. INS*, 73 F.3d 579, 585 (5th Cir. 1996).

[43] *See id.*; *see also Gjetani v. Barr*, 968 F.3d 393, 399 (5th Cir. 2020) (holding that referencing expert reports was enough to satisfy the BIA's burden).

No. 20-60937

James C. Ho, *Circuit Judge*, dissenting in part:

The majority grants the petition for review in part. It does so on the ground that "the BIA erred by not considering evidence in the record that contradicts its finding" regarding improved conditions in Cameroon. *Ante*, at 14. I have a different reading of the record.

According to the majority, the BIA ignored record evidence that "[a]trocities have resumed strongly" in Anglophone Cameroon. That record evidence comes from an exhibit filed by the Government. The majority is correct that the Government's exhibit contains a statement from a press report indicating that "[a]trocities have resumed strongly" in Anglophone Cameroon. But that same exhibit also includes a later press account that reports that the government in Cameroon "granted special status . . . to two English-speaking regions to try to calm a separatist insurgency." That's followed by a subsequent report that former separatists and asylum seekers have begun to return safely to Cameroon.

Those reports may or may not accurately reflect present conditions in that country. But we are required to defer to the findings of the BIA. It is not clear to me that the BIA failed to address key evidence in this case.

I would deny the petition for review.

17