**REVISED August 2, 2018**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-60851

United States Court of Appeals
Fifth Circuit

**FILED**
July 12, 2018

Lyle W. Cayce
Clerk

VICTOR REVENCU,

Petitioner

v.

JEFFERSON B. SESSIONS, III, U. S. ATTORNEY GENERAL,

Respondent

Petition for Review of an Order
of the Board of Immigration Appeals

Before KING, SOUTHWICK, and HO, Circuit Judges.

KING, Circuit Judge:

Victor Revencu, a native and citizen of Moldova, petitions for review of the decision of the Board of Immigration Appeals, upholding the immigration judge's denial of his application for withholding of removal under the Immigration and Nationality Act, 8 U.S.C. § 1231(b)(3). The immigration judge concluded—and the Board of Immigration Appeals affirmed—that Revencu had not demonstrated that he was persecuted on account of his actual or imputed political opinion or membership in a particular social group. We DISMISS the petition for review with respect to Revencu's arguments that we lack jurisdiction to review. In all other respects, the petition is DENIED.

No. 16-60851

## I.

Victor Revencu is a native and citizen of Moldova. In April 2010, he was removed to Moldova after attempting to enter the United States with an invalid B1/B2 visitor visa. About five years later, on May 9, 2015, Revencu illegally entered the United States. On the same day, the Department of Homeland Security ("DHS") issued a decision to reinstate his April 2010 removal order pursuant to 8 U.S.C. § 1231(a)(5). However, Revencu was not immediately deported, as he expressed fear of returning to Moldova. After interviewing Revencu, an asylum officer found that Revencu had a reasonable fear of persecution in Moldova. Subsequently, Revencu submitted an application for withholding of removal under 8 U.S.C. § 1231(b)(3) and for protection pursuant to the Convention Against Torture ("CAT").[1]

In April 2016, an immigration judge ("IJ") held a hearing to determine the merits of his application. In a decision issued in June 2016, the IJ found that Revencu's claim of fear of return to Moldova was based on four incidents. The first two involved only his then-future wife. The third and fourth involved Revencu himself and occurred in December 2014. On December 15, the police summoned him to the local station. At the station, several officers questioned Revencu. One officer stated that Revencu was seen driving people to various protests organized by Renato Usati, the leader of a recently formed opposition party. The officers demanded that Revencu tell them about Usati. Revencu denied knowledge of Usati, explaining that he was merely a bus driver and not a supporter of Usati. The officers then asked Revencu to join Usati's party so that he could inform them about the party's activities. Revencu told them that

---

[1] As his removal order was reinstated pursuant to 8 U.S.C. § 1231(a)(5), Revencu is not eligible to apply for asylum under 8 U.S.C. § 1158. *See Ramirez-Mejia v. Lynch*, 794 F.3d 485, 489–91 (5th Cir. 2015). But he can apply for withholding of removal and CAT protection. *See id.*

2

he did not want to get involved. After advising him to consider their request, the officers permitted him to leave.

Four days later, Revencu was pulled over by several officers. One officer directed the others to "get to work." The officers then searched Revencu's car and produced a package of white powder and a knife. Though Revencu denied ownership of those items, he was taken to the police station. Revencu was then placed in a cell with only a chair. He was beaten by the officers and suffered a fractured finger, fractured arm, and head injury. The next day, he was taken to the room in which he had been questioned about Usati. An officer told Revencu that the knife allegedly found in his car had been used in two murders. Revencu stated that he had neither seen the knife before nor had the knife been in his car. The officers then told Revencu that his troubles would "go away" if he agreed to be their informant in Usati's party. Though he had no intention of actually being their informant, Revencu agreed because he knew Usati was out of the country at that time and the police were planting evidence on and arresting members of Usati's party. The officers then released him. About a month later, they called to tell him that Usati was returning and that he needed to get ready to be an informant. To avoid becoming an informant, Revencu left for the United States with his then-wife a few months later.

Based on these factual findings, the IJ denied Revencu's application for withholding of removal and CAT protection. With respect to withholding of removal, the IJ agreed with DHS's concession that the harm Revencu suffered would constitute persecution if it was motivated by—as Revencu claimed—his political opinion or membership in a particular social group. However, the IJ concluded that Revencu never expressed a political opinion nor did the police impute to Revencu any political opinion. The IJ also stated that Revencu failed to identify his membership in a particular social group and, to the extent that

the group was family members of Roma (since his wife is of Roma ethnicity), the record contained no evidence that the persecution his wife suffered was directed at him. Finally, the IJ concluded that the harm Revencu suffered did not amount to torture under the CAT.

Revencu then appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), arguing that withholding of removal was warranted because the harm suffered was based on his political opinion or membership in a particular social group. The BIA found that the IJ did not clearly err with respect to its determinations regarding political opinion and membership in a particular social group and dismissed his appeal. Subsequently, Revencu filed a petition for review of the BIA's decision in this court.

## II.

On appeal, Revencu makes four arguments. First, he contends that he was persecuted based on political views imputed to him by the police. Second, he argues that he will be persecuted for being in the particular social group of family members of Roma. Third, he challenges the IJ's determination that his mistreatment was not torture under the CAT. Finally, he asks this court to remand to the BIA so that the BIA can consider a derivative asylum claim based on his wife's recent grant of asylum.

We do not have jurisdiction over his last two contentions. "[W]e have jurisdiction to determine our own jurisdiction." *Omari v. Holder*, 562 F.3d 314, 318 (5th Cir. 2009). We have jurisdiction to review a final order of removal only if the petitioner has exhausted all administrative remedies available. *See* 8 U.S.C. § 1252(a)(1), (d). A petitioner fails to exhaust such remedies "as to an issue if [he] do[es] not first raise the issue before the BIA." *Omari*, 562 F.3d at 318. "[F]ailure to exhaust an issue deprives this court of jurisdiction over that issue." *Id.* at 319. Here, Revencu did not contest the IJ's determination regarding torture under the CAT to the BIA. Nor did he present his derivative

asylum claim based on his wife's grant of asylum to the BIA. Thus, "[h]is failure to do so is a failure to exhaust, jurisdictionally barring us from addressing the merits" of his last two arguments. *Id.*

As Revencu exhausted his first two contentions, we have jurisdiction to address them. "We review the BIA's decision and only consider the IJ's decision to the extent that it influenced the BIA." *Shaikh v. Holder*, 588 F.3d 861, 863 (5th Cir. 2009). We review questions of law de novo and factual findings under the substantial evidence standard. *Id.* Whether the petitioner has proven eligibility for withholding of removal or CAT protection is a factual finding that we review under the substantial evidence standard. *See Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006). The substantial evidence standard "requires only that the BIA's decisions be supported by record evidence and be substantially reasonable." *Shaikh*, 588 F.3d at 863 (quoting *Omagah v. Ashcroft*, 288 F.3d 254, 258 (5th Cir. 2002)). Under this standard, "reversal is improper unless we decide 'not only that the evidence supports a contrary conclusion, but also that the evidence *compels* it.'" *Chen*, 470 F.3d at 1134 (quoting *Zhao v. Gonzales*, 404 F.3d 295, 306 (5th Cir. 2005)). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Arif v. Mukasey*, 509 F.3d 677, 679 (5th Cir. 2007) (per curiam) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The applicant has the burden of showing that the evidence is so compelling that no reasonable factfinder could reach a contrary conclusion." *Chen*, 470 F.3d at 1134.

"Under 8 U.S.C. § 1231(b)(3)(A), withholding of removal is a mandatory form of relief if an alien's life or freedom would be threatened in the country of removal because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." *Shaikh*, 588 F.3d at 864. As Revencu filed his application for withholding of removal in 2015, the REAL ID

No. 16-60851

Act applies. Pub. L. 109-13, 119 Stat. 231 (2005) (codified in parts of 8 U.S.C. §§ 1229a(c), 1158(b)). "[U]nder the REAL ID Act, an alien must 'establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least *one central reason for persecuting* the applicant.'" *Shaikh*, 588 F.3d at 864 (quoting 8 U.S.C. § 1158(b)(1)(A)). The statutorily protected ground cannot be "incidental, tangential, superficial, or subordinate to another reason for harm." *Id.* (quoting *Matter of J–B–N & S–M–*, 24 I. & N. Dec. 208, 212 (B.I.A. 2007)). "Persecution has been construed as requiring a showing that 'harm or suffering will be inflicted upon [the petitioner] in order to punish [him] for possessing a belief or characteristic a persecutor sought to overcome.'" *Roy v. Ashcroft*, 389 F.3d 132, 138 (5th Cir. 2004) (per curiam) (second alteration in original) (quoting *Faddoul v. I.N.S.*, 37 F.3d 185, 188 (5th Cir. 1994)). When an applicant for withholding of removal has suffered past persecution, there is a rebuttable presumption that "the applicant's life or freedom would be threatened in the future in the country of removal." *Zhu v. Gonzales*, 493 F.3d 588, 596 (5th Cir. 2007) (quoting 8 C.F.R. § 208.16(b)(1)(i)).

The standard for asylum is similar: an alien is eligible for asylum if he is outside of his country and unable or unwilling to return because of "persecution or a well-founded fear of persecution" on account of one of the previously enumerated statutorily protected grounds. *Sharma v. Holder*, 729 F.3d 407, 411 (5th Cir. 2013) (quoting 8 U.S.C. § 1101(a)(42)(A)). An applicant for asylum, as for withholding of removal, must show "proof of a nexus" between the statutorily protected ground and the persecution. *Id.* at 412. Thus, asylum cases that discuss whether the nexus requirement is fulfilled are instructive in determining whether the statutorily protected ground is indeed one central reason for persecution. The key difference in the standards for asylum and withholding of removal is that for withholding of removal, the alien "must demonstrate a 'clear probability' of persecution upon return." *Roy*, 389

No. 16-60851

F.3d at 138. "A clear probability means that it is more likely than not that the applicant's life or freedom would be threatened by persecution on account of" one of the statutorily protected grounds. *Id.* The "clear probability" standard for withholding of removal is more difficult than the "well-founded fear" standard for asylum. *See Chen*, 470 F.3d at 1138 ("[T]he requirement of 'clear probability' of persecution requires the applicant to show a higher objective likelihood of persecution than that required for asylum.").

## A.

Revencu first claims that he was persecuted based on political views imputed to him by the police. He argues that he was mistreated because the police believed that he had access to inside information on Usati's oppositional political movement. In other words, he contends that there is sufficient proof of a nexus between his imputed political opinion and the harm he suffered. In order to prove that political opinion was one central reason for persecution, "the alien 'must demonstrate through some evidence, either direct or circumstantial, that the persecutors [knew] of his (the alien's) political opinion and [have] or will likely persecute him *because* of it.'" *Sharma*, 729 F.3d at 412 (second alteration in original) (quoting *Ontunez-Tursios v. Ashcroft*, 303 F.3d 341, 351 (5th Cir. 2002)).

Here, the IJ found that Revencu had not proven that he was harmed because of his political opinion or one imputed to him. According to the IJ, though the police initially contacted Revencu based on his driving of Usati supporters, he successfully disavowed his tie to Usati. The IJ explained that Revencu was "so successful" in his renunciation that the police attempted to recruit him as an informant, which was "a clear indication that they believed his assertion that he was neither a member [nor] a supporter" of Usati's party. The BIA affirmed the IJ's conclusions, stating that "the men who attempted to

7

No. 16-60851

recruit the applicant and mistreated him were not motivated by a political opinion imputed to him." We agree with the immigration court.

The Supreme Court case *I.N.S. v. Elias-Zacarias*, 502 U.S. 478 (1992), is instructive. *See Rivas-Martinez v. I.N.S.*, 997 F.2d 1143, 1145 (5th Cir. 1993) (concluding that the *Elias-Zacarias* standard for forced conscription applied in a case where guerrillas demanded that the petitioner give them "food and assistance in disseminating anti-government propaganda"). In *Elias-Zacarias*, the Court held that forced conscription by a guerrilla organization does not necessarily constitute persecution on account of political opinion. 502 U.S. at 482. The Court stated that "the mere existence of a generalized 'political' motive underlying the guerrillas' forced recruitment is inadequate to establish . . . the proposition that [the petitioner] fears persecution *on account of* political opinion." *Id.* The Court went on to explain that the petitioner was required to prove that "the guerrillas will persecute him *because of* [his] political opinion, rather than because of his refusal to fight with them." *Id.* at 483; *see Jukic v. I.N.S.*, 40 F.3d 747, 749 (5th Cir. 1994) (holding that the petitioner failed to demonstrate that he would be persecuted based on his political opinion rather than his prior refusal to fight with the Croatian army).

Here, it may be that the police wanted to recruit Revencu to carry out their political goals, but that is not sufficient to prove that Revencu was persecuted on account of his political opinion. *See Elias-Zacarias*, 502 U.S. at 482 (stating that the guerrillas' motive "to fill their ranks in order to carry on their war against the government and pursue their political goals" did not render the forced recruitment persecution on the basis of political opinion). The focus of the nexus inquiry is on whether the "persecutors' actions were motivated by his, the alien's, political opinions." *Ontunez-Tursios*, 303 F.3d at 351. The police's questioning during the first encounter may have been motivated by their belief that Revencu was a Usati supporter, as they had seen

8

him drive Usati supporters to protests. But it is clear that the police did not think Revencu was a Usati supporter at the time of the arrest, beating, and threat of false criminal prosecution. Their mistreatment of Revencu was motivated by their desire for him to be an informant. This supports a fear of persecution upon return because of his refusal to help them, rather than his political opinion.

During his hearing, Revencu testified that during the first encounter, he told the police that he did not "want to be a member of a political party" and that they asked him "to register as a member in their party." We need not decide today whether "not taking sides with any political faction is itself the affirmative expression of a political opinion." *Elias-Zacarias*, 502 U.S. at 483 (not deciding this issue but stating that it is "not ordinarily" the case). Revencu did not testify that the dialogue regarding party membership occurred again during the second incident, when the mistreatment happened. His testimony demonstrates that the police's sole focus during the second encounter was getting Revencu to work as their informant. Even assuming that Revencu's statement was the assertion of political neutrality and that political neutrality could constitute a political opinion, that opinion was not a central reason for his harm. It was "incidental, tangential, superficial, or subordinate to" the police's motive of recruitment. *Shaikh*, 588 F.3d at 864 (quoting *Matter of J–B–N & S–M–*, 24 I. & N. Dec. at 214); *cf. Sangha v. I.N.S.*, 103 F.3d 1482, 1488, 1490–91 (9th Cir. 1997) (recognizing that political neutrality could qualify as a political opinion but concluding that the nexus requirement was not fulfilled since the petitioner "offered no evidence" to show that the terrorist organization persecuted him because of any political opinion); *Cruz-Lopez v. I.N.S.*, 802 F.2d 1518, 1520 n.3 (4th Cir. 1986) ("Because we find an absence of the requisite probability of persecution, we express no opinion on whether [the petitioner's] neutrality is a 'political opinion' under the statute.").

9

No. 16-60851

This case is distinguishable from *Sharma* in which we held that the IJ's finding—affirmed by the BIA—that the petitioner failed to prove that he was persecuted *on account of* his political opinion was not supported by substantial evidence. 729 F.3d at 412. There, the petitioner "was not initially abducted by the Maoists based on his political affiliation," but "he was subjected to torture and a longer detention than [the other students he was with] because of his political opposition to the Maoists." *Id.* "The Maoists then escalated their abuse" when the petitioner told them he supported a political group opposed to them. *Id.* We concluded that "[w]hile it was reasonable for the BIA in this case to find that the Maoists were motivated, at least in part, by [the petitioner's] refusal to cooperate with them," the BIA did not consider "all of the evidence in the record relating to whether the Maoists were also motivated by Sharma's political opinion." *Id.* In contrast, here, the police were motivated primarily, not just "in part," by Revencu's "refusal to cooperate" with them, and his political opinion, if any existed or was imputed to him by the police, played an incidental role. *Id.*

In sum, Revencu has not "set forth evidence so compelling that 'no reasonable factfinder could fail to find'" the nexus requirement fulfilled. *Ontunez-Tursios*, 303 F.3d at 351 (quoting *Elias-Zacarias*, 502 U.S. at 484).

## B.

Revencu also contends that he will be persecuted for being in the particular social group of family members of Roma. He explains that since his wife's persecutors hate Roma, they would hate her spouse too.[2] To prove that he was persecuted based on his membership in a particular social group,

---

[2] To the extent that Revencu makes a claim that he is entitled to withholding of removal based on a pattern or practice of persecution of a group of persons similarly situated on account of a statutorily protected ground, *see Zhao*, 404 F.3d at 307, we lack jurisdiction to consider such a claim because he did not raise it to the BIA, *see Omari*, 562 F.3d at 318.

10

Revencu must demonstrate that he is a member "of a group of persons that share a common immutable characteristic that they either cannot change or should not be required to change because it is 'fundamental to their individual identities or consciences.'" *Hernandez-De La Cruz v. Lynch*, 819 F.3d 784, 786 (5th Cir. 2016) (quoting *Orellana-Monson v. Holder*, 685 F.3d 511, 518 (5th Cir. 2012)).

The IJ found that to the extent Revencu's claimed social group was family members of Roma, the record is devoid of evidence that the persecution suffered by his wife was directed at him. The BIA agreed. Revencu has not proffered any evidence to compel a contrary conclusion. While his wife was beaten twice based on her ethnicity, he was not physically present at those times. Persecution of family members alone cannot render an alien eligible for withholding of removal. *Cf. Arif*, 509 F.3d at 681 n.15 ("[A]n alien 'cannot rely solely on the persecution of her family members to qualify for asylum.'" (quoting *Margos v. Gonzales*, 443 F.3d 593, 598 (7th Cir. 2006))). Thus, we affirm the BIA's decision with respect to persecution based on membership in a particular social group.

## III.

For the foregoing reasons, Revencu's petition for review is DISMISSED with respect to his arguments that we lack jurisdiction to review and DENIED in all other respects.