# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 16, 2021

Lyle W. Cayce
Clerk

No. 18-60276

Irma Emperatriz Berrios-Bruno; Julio Cesar Rodriguez-Berrios; David Elias Rodriguez-Berrios,

*Petitioners*,

*versus*

Merrick Garland, U.S. Attorney General,

*Respondent*.

Petitioner for Review from an Order of the
Board of Immigration Appeals
BIA No. A202 004 616
BIA No. A202 004 617
BIA No. A202 004 618

Before Smith, Graves, and Ho, *Circuit Judges*.

Per Curiam:*

Irma Emperatriz Berrios-Bruno seeks review of a Board of Immigration Appeals ("BIA") decision affirming an Immigration Judge's ("IJ") denial of her asylum petition on behalf of herself and her two minor

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

children. Finding no error in the agency's decisions, we deny the petition for review.

I.

Berrios is an El Salvadorean citizen. Around 2003, when she was fifteen years old, she began a relationship with David Elias Rodriguez Cortes. After Berrios gave birth to the first of their two sons, the family moved into a home on land belonging to Berrios' family. Berrios and Rodriguez never officially married, but Berrios described their relationship as a common-law marriage or domestic partnership, and she testified that Rodriguez had long been physically and emotionally abusive.

In 2014, a man named Alfredo, who purported to be a representative of the MS-13 gang, approached Rodriguez and demanded money. To stave off threatened violence, Rodriguez began making semi-regular payments to Alfredo until, later that year, he was kidnapped for failure to meet the gang's payment demands. Berrios then learned of Rodriguez' payments for the first time when Alfredo told Berrios that MS-13 had kidnapped Rodriguez. Berrios recognized from Alfredo's tattoos that he was an MS-13 member. Alfredo later wrote Berrios a letter threatening her and her children unless she paid him. Berrios then fled with her children to the United States, where she surrendered to border officials. While in detention, she learned that Rodriguez had escaped his captivity and fled to his brother's home in Playa El Espino, about fifty miles from Berrios' hometown. At some point in 2015, Rodriguez also fled El Salvador to the United States.

After the Department of Homeland Security concluded that Berrios was removable, Berrios and her two children applied for asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and protection under the Convention Against Torture ("CAT"). Berrios' application listed her two children as derivatives. Berrios asserted two

grounds for asylum. First, she sought asylum based on the domestic abuse Rodriguez inflicted upon Berrios. She thus asserted a fear of persecution in El Salvador due to her membership in the particular social group of "nuclear family members of David Elias Rodriguez Cortes." Second, she claimed relief on account of her fear of retribution by the MS-13 gang for Rodriguez' escape, also due to her relationship to Rodriguez.

At a hearing before an IJ, Berrios testified about the abuse she suffered from Rodriguez and the threats she had received from MS-13 in El Salvador. She feared that the gang would find and kill her and her children if she returned to El Salvador. The Berrios family also presented the testimony of Dr. Thomas Boerman, whom the IJ recognized as an expert in "gangs and other organized criminal groups in El Salvador." Dr. Boerman testified about MS-13's culture generally, and opined that the gang would be intent on punishing Rodriguez for his escape, and that this punishment would include killing Berrios. Dr. Boerman said that "typically" the MS-13 gang would threaten a targeted individual's family because "part of that strategy of terror is to say that once you . . . are on our radar screen, once you fall into disfavor with us, it is not just you that is at risk but the people you love most, and that's a critical dimension in how they coerce the public into complying with their [] demands." According to Dr. Boerman, if the gang could not find and kill Rodriguez after his escape, "his wife . . . would then serve as the proxy for their rage. They would punish him by harming her." Dr. Boerman acknowledged that MS-13 might be less stringent with Berrios' children, but he still opined that they were at risk of violence from MS-13. Dr. Boerman stated that he had seen hundreds of cases where MS-13 had beaten and killed children belonging to targeted families.

To support its applications, the Berrios family submitted identity documents, written statements from family and interested individuals, social media information, evidence of country conditions, and declarations from

Dr. Boerman and six other putative experts. Berrios' mother, for example, submitted a signed statement asserting that the gang had threatened to kill Berrios if Berrios did not pay her husband's ransom. Berrios's mother also noted, however, that the family had not heard from the gang since Rodriguez' escape.

The IJ denied the family's claims for asylum, withholding of removal, and protection under the CAT, and ordered the family removed to El Salvador. The IJ first concluded that Berrios was not credible in her testimony regarding Rodriguez' abuse, and denied her domestic-violence-based asylum petition. The IJ then "accepted" Dr. Boerman's testimony as it pertained to gangs in El Salvador, but the IJ nonetheless found that Berrios and her children had not shown that their fear of persecution involved a protected ground. The IJ observed that regardless of whether a nuclear family can be a basis for asylum, economic extortion is not cognizable under the INA. The IJ determined that the family relationship to Rodriguez was "entirely subordinate to the primary reason for the harm," which was the gang's illicit financial motive. The IJ found that "putting pressure on family members" was "simply [a] means to an end." The IJ similarly denied the claims for withholding of removal and CAT protection.

Berrios appealed to the BIA, which affirmed the IJ's decision and dismissed the appeal. As to the family-based claim for asylum and withholding of removal, the BIA "acknowledge[d] that family may constitute a particular social group," but it did not analyze the viability of Berrios' asserted social groups. Instead, the BIA affirmed by finding no error in the IJ's ruling that the gang's motivation was financial "as opposed to harming [Berrios and her children] on account of their family status.". The BIA reasoned that Dr. Boerman's testimony was "not inconsistent with" the IJ's conclusion that any desire to harm Berrios and her children "was entirely subordinate to the primary motivation of perpetuating the criminal

enterprise." The Berrios family timely filed a petition for review in this court, contesting only the agency's nexus determination for the family-based asylum claim. We have subject-matter jurisdiction under 8 U.S.C. § 1252(b)(1) and (2).

## II.

We typically review only the BIA's decision, but we also review the IJ's decision if it had "some impact on" the BIA's decision. *Wang v. Holder*, 569 F.3d 531, 536 (5th Cir. 2009). We review factual findings under the substantial evidence standard, and we review legal questions de novo. *Rui Yang v. Holder*, 664 F.3d 580, 584 (5th Cir. 2011). The BIA's factual determination that an alien is not eligible for asylum or withholding of removal is reviewed under the substantial evidence standard. *Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006). Under that standard, Berrios must show that "the evidence is so compelling that no reasonable factfinder could" conclude against her. *Orellana-Monson v. Holder*, 685 F.3d 511, 518 (5th Cir. 2012) (internal quotation marks and citation omitted).

Berrios' primary arguments on appeal center around nexus and the extent to which an asylum applicant's protected ground must factor into her credible fear of persecution. She argues that she is "eligible for asylum because she was persecuted on account of her status as [Rodriguez'] nuclear family member[.]"She contends that the BIA erroneously required her to prove that her family status was *the* central reason for her persecution. She argues instead that under the INA, she must show only that her status as Rodriguez' family member was *a* central reason for her persecution. Finally, Berrios contends that the IJ wrongly concluded that Berrios was not credible, and that he impermissibly substituted his own opinions and speculation for record evidence, tainting the IJ's entire ruling.

As a preliminary matter, any error in the IJ's credibility determination was harmless. That determination pertained only to a separate ground that Berrios asserted for asylum and which is not contested on appeal. Further, the BIA did not adopt the IJ's credibility determination, so that determination has no bearing on this appeal. *INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach."). And as Berrios has not shown she is eligible for refugee status, any error in the immigration judge's credibility assessment was harmless. *Luna-Garcia v. Barr*, 932 F.3d 285, 292 (5th Cir. 2019), *cert. denied*, 141 S. Ct. 157 (2020) (denying a petition for review where, even absent the error, "there is no realistic possibility that the BIA would reach another outcome than to dismiss [the] appeal").

## III.

An applicant for asylum must demonstrate that she is a "refugee" within the INA's meaning. *See* 8 U.S.C. § 1158(b)(1)(B)(i). A refugee is a person outside her country of nationality who "is unable or unwilling to return to . . . that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A).[1] An asylum applicant must therefore prove that she belongs to a protected class,

---

[1] The INA does not define "persecution on account of . . . membership in a particular social group," 8 U.S.C. § 1101(a)(42)(A), and courts have repeatedly recognized the phrase as ambiguous. *E.g.*, *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) (acknowledging "that the BIA should be accorded *Chevron* deference as it gives ambiguous statutory terms concrete meaning through a process of case-by-case adjudication" (internal quotation marks and citation omitted)). We therefore have often deferred to the BIA's interpretation of the INA's nexus requirement. *See Orellana-Monson v. Holder*, 685 F.3d 511, 517 (5th Cir. 2012).

and that she was persecuted because of that characteristic. *Thuri v. Ashcroft*, 380 F.3d 788, 792 (5th Cir. 2004) (noting the requirement that the "alien [must] prove some nexus between the persecution and the five protected grounds" (citing *Ontunez-Tursios v. Ashcroft*, 303 F.3d 341, 349 (5th Cir. 2002))); *INS v. Elias-Zacarias*, 502 U.S. 478, 482–84 (1992) (requiring a showing of compelling evidence of the motive behind the persecution).

An asylum applicant satisfies this burden by showing that her protected characteristic "was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i). This means that while the protected ground, such as membership in a particular social group, "need not be the only reason for harm, it cannot be incidental, tangential, superficial, or subordinate to another reason for harm." *Sealed Petitioner v. Sealed Respondent*, 829 F.3d 379, 383 (5th Cir. 2016). The BIA and this court have recognized that a nuclear family may constitute a particular social group under the INA. *See Pena Oseguera v. Barr*, 936 F.3d 249, 250–51 (5th Cir. 2019). To show proof of the required nexus, the petitioner "must demonstrate through some evidence, either direct or circumstantial, that the persecutors know of his (the alien's) political opinion and [have] or will likely persecute him because of it." *Ontunez-Tursios*, 303 F.3d at 351. The petitioner need not provide direct proof of her persecutor's motives, but must provide "some evidence of it, direct or circumstantial." *Elias-Zacarias*, 502 U.S. at 483. When, as is often the case, a persecutor has multiple or mixed motives, the agency must then conduct a mixed-motive analysis to determine whether the protected ground was "at least one central reason" for the persecution. *Shaikh v. Holder*, 588 F.3d 861, 864 (5th Cir. 2009); 8 U.S.C. § 1158(b)(1)(B)(i). We examine the contours of that test below.

A.

Berrios contends that the IJ and BIA applied an incorrect legal standard by requiring her to show that family membership was the "primary motivation" for her persecution. Instead, she argues that she need show only that her family membership was one central reason for her persecution. Although Berrios articulates the correct standard, we are not convinced that the IJ or the BIA deviated from controlling precedent or applied an incorrect standard. An asylum applicant must first show that a protected ground motivated her persecution. *Elias-Zacarias*, 502 U.S. at 483. If an applicant has made this threshold showing but there are other, non-protected grounds motivating the persecution, the agency must then conduct a mixed-motive analysis to determine whether the protected ground was "at least one central reason" for the persecution. 8 U.S.C. § 1158(b)(1)(B)(i); *Shaikh*, 588 F.3d at 864. Under that test, the applicant need not prove that her protected ground was *the* central reason, but the existence of a protected ground, by itself, does not necessarily suffice to show nexus. *Matter of L-E-A-*, 27 I. & N. Dec. 40, 45 (BIA 2017), *aff'd in part, rev'd in part*, 27 I. & N. Dec. 581 (A.G. 2019), *reinstated*, 28 I. & N. Dec. 304 (A.G. 2021) ("[N]exus is not established simply because a particular social group of family members exists and the family members experience harm."). Conversely, the existence of an unprotected motivation does not necessarily defeat nexus.

What matters is the relative weight of the protected ground. To gauge this weight, the BIA has articulated a sequential two-step test: first the applicant must demonstrate that the protected ground was a but-for cause of the persecution; and second she must demonstrate that the protected ground played more than a minor role in motivating the persecution. *Matter of L-E-A-*, 27 I. & N. Dec. at 43-44. "If the persecutor would have treated the applicant the same if the protected characteristic . . . did not exist, then the applicant has not [satisfied the but-for cause test.]" *Id.* After satisfying this

first prong, the applicant must then demonstrate that the protected ground was not "incidental, tangential, superficial, or subordinate to another reason for harm." *Sealed Petitioner*, 829 F.3d at 383. A protected ground will likely be incidental when it is but a means to an ultimate, unprotected end. *E.g.*, *Ramirez-Mejia v. Lynch*, 794 F.3d 485, 492 (5th Cir. 2015).

The agency's analysis comports with these standards. The IJ concluded that Berrios' family status played no more than a minor role in the gang's motivation to persecute her, and therefore that her application failed on the second prong of the BIA's promulgated nexus test. Although the IJ did not use the phrase "one central reason," he cited our decision in *Ramirez-Mejia* for the proposition that Berrios' "family relationship is entirely subordinate to the primary motivation of the alleged persecutor, that being a criminal gang." The BIA found no clear error in this factual conclusion, noting that the IJ's decision was "not inconsistent" with Dr. Boerman's testimony that the gangs' "strategy of terror undergirds how [they] compel others to accede to their criminal demands," and therefore that Berrios' family status is "entirely subordinate" to its interests in money and power in El Salvador. Contrary to Berrios' argument, nowhere did the agency require her to prove that her family status was the *only* central reason, or even the *most* central reason. Instead, it concluded that Berrios had not demonstrated that her family status was *a* central reason.

B.

We also find no clear error in the agency's conclusion, which is consistent with our caselaw. "[T]o obtain judicial reversal of the BIA's determination" that the gang did not target Berrios on account of a protected ground, Berrios "must show that the evidence [s]he presented was so compelling that no reasonable factfinder could fail to find" the nexus requirement satisfied. *Elias-Zacarias*, 502 U.S. at 483–84. It is "[q]uite beside

the point" that the record *might* support the conclusion that Berrios' family status was at least one central reason for the gang's efforts to extort her. *Id.* at 481 n.1. The substantial-evidence standard does not permit us to re-weigh evidence or to substitute our own factual determinations for the agency's. *Chen v. Gonzales*, 470 F.3d at 1134. We ask only whether a reasonable factfinder could agree with the agency's determination; *i.e.*, whether substantial evidence supports the agency's nexus conclusion.

It is true that Berrios' family status likely explains why the gang persecuted her and not some other person. There is nothing that she did to draw the gang's ire; it was only the actions of her children's father that made her a target. The Fourth Circuit found nexus under similar circumstances. In *Hernandez-Avalos v. Lynch*, 784 F.3d 944 (4th Cir. 2015), a mother was threatened by gang members because she refused to let her son join their ranks. *Id.* at 947. The Fourth Circuit recognized that the gang's motive was recruitment and not a free-standing grudge against the family. *Id.* at 950. But that "recruitment motiv[e]," the Fourth Circuit explained, "did not preclude the existence of another central reason – family ties – for that same persecution," because it was the mother's tie to her son that explained why she, rather than another person, was targeted for threats. *Id.*

We disagree with this approach and find, moreover, that this approach is inconsistent with caselaw from the BIA, this court, and the majority view of other circuits. *See, e.g.*, *Sanchez-Castro v. U.S. Att'y Gen.*, 998 F.3d 1281, 1287 (11th Cir. 2021) ("We decline to follow [the Fourth Circuit's] reasoning because it expands the nexus inquiry to include family status as a central reason even when it is 'incidental' and 'subordinate to another reason for harm.'"); *Orellana-Recinos v. Garland*, 993 F.3d 851, 858 (10th Cir. 2021) ("To the extent that the Fourth Circuit's opinion holds that a gang's threats to persuade a mother to encourage, or at least allow, a son to join the gang is necessarily persecution on account of the mother's membership in the son's

nuclear family, we are unpersuaded."). *See also Matter of L-E-A-*, 27 I. & N. Dec. at 46-47 ("Any motive to harm the [applicant] because he was a member of his family was, at most, incidental. In this regard, we point out that the evidence does not indicate that the persecutors had any animus against the family or the [applicant] based on their biological ties, historical status, or other features unique to that family unit.").

First, Berrios' assertion is inconsistent with the INA's text. Under Berrios' and the Fourth Circuit's reasoning, the family member whom the gang principally extorts would not be entitled to eligibility, as extortion does not qualify as a protected ground, but another family-member, targeted by the gang in only an ancillary fashion, could qualify. *Garcia v. Holder*, 756 F.3d 885, 890 (5th Cir. 2014) ("This court does not recognize economic extortion as a form of persecution under immigration law[.]"). However, the INA requires that an asylum applicant be persecuted "on account of" her membership in a particular social group. The INA therefore "makes motive critical" to obtaining asylum, and that motive must be specifically tied to one of the five grounds enumerated in the statute. *Elias-Zacarias*, 502 U.S. at 483. The BIA has thus clarified that an applicant's membership in a particular social group is not a motive for persecution if the persecutors are simply pursuing separate, unprotected objectives and the applicant's membership in the group is relevant only as a means to an end, that it just allows the persecutors to achieve their objectives. *See Matter of L-E-A-*, 27 I. & N. Dec. at 43-45.

Here, the BIA reasonably concluded—and the record does not compel a contrary conclusion—that the gang targeted Berrios only to effectuate its interests in maintaining a viable extortion regime, not because it had some animus against Rodriguez' family. This is not to say that nexus is defeated anytime a persecutor is motivated by financial interests. The result might be different if, say, the gang had a pattern of targeting only certain families. *See*

*Id.* at 46-47 (noting that nexus may be established where the gang's animus is rooted in traits unique to a specific family). But according to Berrios' expert, the gang would have had the same attitude toward anyone who defied its extortion demands. Berrios' relationship to Rodriguez is thus relevant only as a means to the gang's illicit financial objectives. Further demonstrating this means-end relationship, as opposed to animus against Berrios' family, is that Berrios' family members remain in El Salvador, unmolested by the gang. *Ontunez-Tursios*, 303 F.3d at 353 ("The fact that a persecutor has not opposed other members of the same group suggests that the persecution was not on account of that group membership.").

Second, the BIA's conclusion is consistent with this court's caselaw. In *Ramirez-Mejia v. Lynch*, 794 F.3d 485 (5th Cir. 2015), gang members in Honduras had murdered the petitioner's brother and then began sending the petitioner anonymous notes demanding that she reveal information that her brother may have revealed to her. *Id.* at 487. When the petitioner failed to respond to those notes, gang members shot up her father's business, after which she fled the country. *Id.* The petitioner argued that she was persecuted on account of her relationship to her brother, because, had she not been related to her brother, the gang would not have targeted her. *Id.* at 492 (arguing that "[w]ithout her relationship to her brother, the gang would not have asked her about any hypothetical 'information'"). We rejected this argument and held that she was not entitled to withholding of removal.[2] We concluded that there "is no reason to suppose that those who persecute to

---

[2] It should be noted that withholding of removal imposes "a higher standard than asylum." *Efe v. Ashcroft*, 293 F.3d 899, 906 (5th Cir. 2002). However, this court has held that applicants for withholding of removal must similarly show that a protected ground, including membership in a particular social group, was or will be "at least one central reason for persecuting the applicant." *Revencu v. Sessions*, 895 F.3d 396, 402 (5th Cir. 2018).

obtain information also do so out of hatred for a family, or vice versa," and therefore "the evidence that gang members sought information from Ramirez-Mejia about her brother, without more, does not support her claim that the gang intended to persecute her on account of her family." *Id.* at 493. We also relied on "the fact that other members of her family, who have remained in Honduras, have not faced persecution on the basis of their membership in the family." *Id.* We took a similar approach in *Quinteros-Hernandez v. Sessions*, 740 F. App'x 57 (5th Cir. 2018). There, the petitioner alleged that gang members pressured her son to join their ranks by threatening to kill her son's family. *Id.* at 58. But there was no evidence that "family members who remained in El Salvador were threatened after Quinteros-Hernandez and her son left the country, nor is there any evidence that gang members threatened her or attempted to recruit her son due to their animosity toward her family." *Id.* Accordingly, the petitioner failed to show that "her family membership was a central reason for the alleged persecution and was not subordinate or tangential to the gang members' recruitment of Herrera-Quinteros." *Id. Accord Parra-Hernandez v. Sessions*, 712 F. App'x 446, 447 (5th Cir. 2018).

So too here. The gang's only motivation was extortion, not animus against Berrios based on her family status. Because Berrios' relationship to Rodriguez was subordinate and tangential to the gang's illicit financial motives, the relationship was not a central reason for the gang's demands. Because substantial evidence and this court's caselaw support the agency's determination, we DENY the petition for review.