# United States Court of Appeals
# for the Fifth Circuit

No. 22-60177
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

March 23, 2023

Lyle W. Cayce
Clerk

CARLOS LEONEL ERAZO-FLORES,

*Petitioner*,

*versus*

MERRICK GARLAND, *U.S. Attorney General*,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A209-305-007

Before KING, HIGGINSON, and WILLETT, *Circuit Judges*.

PER CURIAM:*

Carlos Leonel Erazo-Flores petitions for review of the BIA's decision denying him asylum, withholding of removal, and protection under the Convention Against Torture. For the following reasons, the petition is DENIED.

---

* This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 22-60177

## I.

Carlos Leonel Erazo-Flores is a native and citizen of Honduras. He testified that in 2013, he was leaving church in his village in Honduras when four drunk male strangers came up to him, grabbed him, beat him, and raped him. The men took Erazo-Flores, threw him on the ground, and asked him why he went to church. They laughed at him, said he was "going to be a gay [*sic*]," and threatened to kill him if he yelled. Erazo-Flores did not report this incident to the police because, in part, he was afraid the police would tell others that he had been sexually assaulted.

Additionally, Erazo-Flores testified to various encounters with gang members between April 2014 and May 2015. Some men tried to steal Erazo-Flores's motorcycle, and gang members later attempted to recruit Erazo-Flores. Erazo-Flores reported one such incident to the police, but an officer tore up his written statement and told him that the gangs would find out he had filed a report. Erazo-Flores and his father then received various threats via text message. Finally, in June 2017, someone—Erazo-Flores believes it was a gang member—hit the car of Erazo-Flores's father from behind and shot at him.

In 2016, Erazo-Flores entered the United States without authorization. The Department of Homeland Security ("DHS") then issued him a Notice to Appear ("NTA") charging him with removal as a noncitizen not in possession of a valid entry document at time of entry. Through counsel, Erazo-Flores conceded the NTA's factual allegations and charge. He then filed for asylum, withholding of removal, and protection under the

Convention Against Torture ("CAT") based on, as relevant to this appeal, his religion and membership in a particular social group ("PSG").[1]

At his hearing in front of an Immigration Judge ("IJ"), Erazo-Flores proffered seven PSGs based primarily on his imputed membership in the LGBTQ community, Catholicism, and opposition to criminal gangs.[2] The IJ denied Erazo-Flores's application. Concerning his asylum and withholding of removal claims, the IJ first held that Erazo-Flores could not establish the requisite nexus to a protected ground. The IJ also held that Erazo-Flores's proffered PSG of "Honduran male witnesses" was not a cognizable PSG. Finally, the IJ denied Erazo-Flores's application for CAT protection for failure to establish a sufficient likelihood of future torture with the requisite state acquiescence. The Board of Immigration Appeals ("BIA") affirmed the IJ's decision without a written opinion. Erazo-Flores timely filed a petition for review with this court.

## II.

"When . . . the BIA affirms the immigration judge and relies on the reasons set forth in the immigration judge's decision, this court reviews the decision of the immigration judge as well as the decision of the BIA." *Ahmed v. Gonzales*, 447 F.3d 433, 437 (5th Cir. 2006). In doing so, we review for substantial evidence the IJ's factual findings, which include an applicant's eligibility for asylum, withholding of removal, and CAT relief. *Chen v.*

---

[1] Erazo-Flores withdrew his political opinion-based claims for relief

[2] Specifically, these seven PSGs are: (1) imputed members of the LGBTQ community; (2) Catholic-Honduran males; (3) Honduran males perceived to be enemies of criminal gangs by virtue of their opposition to gang influence; (4) Honduran males perceived to be advocates for strong rule of law by virtue of their resistance to gang influence; (5) Catholic-Honduran males who refuse to join criminal gangs; (6) Honduran males perceived to encourage public opposition to criminal gangs by refusing to submit to gang authority; and (7) Honduran male witnesses.

*Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006). Substantial evidence exists if the BIA's conclusion was "based upon the evidence presented and . . . substantially reasonable," *Carbajal-Gonzalez v. INS*, 78 F.3d 194, 197 (5th Cir. 1996) (quoting *Wilson v. INS*, 43 F.3d 211, 213 (5th Cir. 1995)), and we will reverse the BIA's factual findings only if "the evidence compels" a contrary result because "no reasonable factfinder could conclude against it," *Wang v. Holder*, 569 F.3d 531, 536–37 (5th Cir. 2009).

## A. Asylum and Withholding of Removal

To receive asylum, an applicant must establish the suffered or feared persecution was on account of one of the five statutorily protected grounds; this is the "nexus requirement." 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(B)(i); *Sharma v. Holder*, 729 F.3d 407, 411 (5th Cir. 2013); *see Tamara-Gomez v. Gonzalez*, 447 F.3d 343, 349 (5th Cir. 2006) (noting the noncitizen "carries the burden to establish a nexus").

On appeal, Erazo-Flores first argues he is eligible for asylum and withholding of removal because his sexual assault by the four men qualifies as past persecution on account of his religion. But the record indicates that this sexual assault could also be characterized as personally- or criminally-motivated conduct not constituting persecution on account of a protected ground. *See Ramirez-Mejia v. Lynch*, 794 F.3d 485, 492–93 (5th Cir. 2015) (affirming a determination of no nexus where evidence suggested motivations for harm were to criminally extort information). The IJ concluded that the four men approached Erazo-Flores intending to commit assault based on general criminal motivations, not by Erazo-Flores's religious background. This conclusion is supported by the record. Erazo-Flores testified that the men did not know who he was or that he was religious when he was initially approached. The men approached Erazo-Flores and, according to his affidavit, grabbed and threw him to the ground before he told

the attackers that he was coming from church. These men did not know of Erazo-Flores's religious background when they approached and attacked him, and Erazo-Flores testified that he never saw these men again. This thus suggests that this attack was the kind of random, indiscriminate violence driven by a criminal motive that we have previously declined to consider persecution on account of a protected ground. *See Thuri v. Ashcroft*, 380 F.3d 788, 792–93 (5th Cir. 2004) (holding that officers motivated by criminal, personal reasons did not persecute applicant on account of a protected ground). Under such facts, the evidence does not compel a result contrary to the IJ's conclusion that any purported religious motivation on the part of the attackers was an "incidental, tangential, superficial, or subordinate" reason for the harm. *Shaikh v. Holder*, 588 F.3d 861, 864 (5th Cir. 2009) (internal citation omitted). The IJ's decision that Erazo-Flores had failed to establish nexus is thus "supported by record evidence and substantially reasonable." *Revencu v. Sessions*, 895 F.3d 396, 401 (5th Cir. 2018) (quoting *Shaikh*, 588 F.3d at 863).

Erazo-Flores next argues that he was threatened and fears reprisal from gang members because of his filing a police report and his membership in the PSG of "Honduran male witnesses." A PSG must be (i) "composed of members who share a common immutable characteristic," (ii) "defined with particularity," and (iii) "socially distinct within the society in question." *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014); *see Orellana-Monson v. Holder*, 685 F.3d 511, 519–22 (5th Cir. 2012) (according deference to the BIA's interpretation of a PSG and noting that the agency's factual findings on PSG cognizability criteria must be supported by substantial evidence). Concerning the social distinction requirement, social distinction is "determined by 'the extent to which members of a society perceive those with the characteristic in question as members of a social

group.'" *Hernandez-De La Cruz v. Lynch*, 819 F.3d 784, 786 (5th Cir. 2016) (quoting *Orellana-Monson*, 685 F.3d at 519–20).

Groups based on being a witness lack the required social distinction to qualify as a PSG, as members of such groups "are not substantially different from anyone else in the general population" who resist criminal organizations. *Hernandez-De La Cruz*, 819 F.3d at 787. The present case is no different. The IJ found no evidence suggesting that the Honduran community views male witnesses as a separate and distinct part of the community. Erazo-Flores's arguments to the contrary are unavailing. He notes "widely unenforced laws which have been enacted in Honduras to protect members of civil society from gang violence" as evidence of social distinction. But he does not identify any laws with the requisite specificity required for us to consider these as evidence of social distinction. *Cf. Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (explaining that courts will not sift through the record to identify the specific evidence supporting a party's contention). And in any case, his characterization of these laws as protecting "members of civil society" does not show that these laws distinguish between "Honduran male witnesses" and the larger, more general group of Hondurans (who may not be witnesses) requiring protection from gang violence. *See Aranda-Galvan v. Lynch*, 623 F. App'x 217, 219 (5th Cir. 2015) (rejecting PSG because plaintiff did not show evidence compelling a conclusion that his native country's society perceives those individuals as a distinct group); *Matter of H-L-S-A-*, 28 I. & N. Dec. 228, 239 (BIA 2021) (similar). Similarly, he argues that his proffered PSG is socially distinct because "rumors began to spread throughout his community that he had defied the authority of the gangs," but such occurrences say nothing about whether Honduran society views Honduran male witnesses as a distinct group. Accordingly, this proffered PSG fails for lack of social distinction, and it cannot serve as a basis for Erazo-Flores's asylum claim. The IJ did not err

No. 22-60177

in refusing to recognize this PSG and in denying Erazo-Flores's asylum claim on these grounds.

Additionally, because the level of proof required for withholding of removal is "more stringent than for asylum purposes," Erazo-Flores's failure to establish eligibility for asylum necessarily dooms his withholding of removal claim.[3] *Eduard v. Ashcroft*, 379 F.3d 182, 186 n.2 (5th Cir. 2004) (quoting *Mikhael v. INS*, 115 F.3d 299, 306 (5th Cir.1997)).

## B. Convention Against Torture

Concerning his CAT claim, Erazo-Flores also challenges the BIA's determination that he did not establish a clear probability of future torture; he argues his testimony and proffered evidence compel the conclusion that he established eligibility for CAT protection. An applicant seeking CAT protection must prove that he will more likely than not be tortured "by or at the instigation of or with the consent or acquiescence of a public official acting in an official capacity or other person acting in an official capacity." *Tabora Gutierrez v. Garland*, 12 F.4th 496, 502 (5th Cir. 2021) (quoting 8 C.F.R. § 1208.18(a)(1)); *see also* 8 C.F.R. § 1208.16(c)(2). In assessing the likelihood of torture, the IJ considers evidence of past torture, the applicant's ability to relocate within the country of removal to avoid torture, and human rights violations within the country of removal. *Tabora Gutierrez*, 12 F.4th at 503.

Erazo-Flores fails to demonstrate that he is more likely than not to be tortured. He does not adequately explain what record evidence supports

---

[3] Because Erazo-Flores presents no arguments on appeal concerning his other proposed PSGs, he has waived these arguments. *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("An appellant abandons all issues not raised and argued in its initial brief on appeal. . . . A party who inadequately briefs an issue is considered to have abandoned the claim.").

No. 22-60177

reversing the IJ's determination that his past harm did not rise to the requisite level of "severe pain or suffering." *Id.* at 502. Additionally, Erazo-Flores does not adequately contest the IJ's conclusion that he could relocate to avoid future harm because he was able to live for over a year in Honduras without incident. Thus, the IJ's conclusions concerning a lack of past torture and Erazo-Flores's ability to safely relocate are substantially reasonable. *Revencu*, 895 F.3d at 401. Consequently, Erazo-Flores cannot show a likelihood of torture, which precludes his eligibility for CAT protection.[4] *Tabora Gutierrez*, 12 F.4th at 502–03.

## III.

For the foregoing reasons, the petition for review is DENIED.

---

[4] We need not and thus do not reach the state acquiescence prong of the CAT analysis and thus decline to consider Erazo-Flores's arguments that the Honduran government would acquiesce to any future torture. *See, e.g.*, *Tabora Gutierrez*, 12 F.4th at 503 (stating that a CAT applicant must show both likelihood of torture and state acquiescence to receive CAT protection).